THE PEOPLE ex rel. JOHN S. COYLE, Appellant, *v.* JAMES J. MARTIN et al., as Police Commissioners of the City of New York, Respondents.

While, where a decision of the board of police commissioners of the city of New York removing a patrolman from the police force has been affirmed by the General Term, this court cannot interfere if there was any evidence fairly sustaining the decision, it may review and reverse it where there is no real conflict in the evidence and there is a substantial failure of evidence to sustain the decision.

(Argued April 23, 1894; decided May 1, 1894.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made April 3, 1893, which affirmed proceedings of the respondents dismissing the relator from the police force, and dismissed a writ of certiorari to review such proceedings.

The facts, so far as material, are stated in the opinion.

*Louis J. Grant* for appellant.. The commissioners have failed to weigh the testimony offered before them according to legal rules, and to give effect to explanations which clearly show that though relator did strike Mildrum, yet the circumstances which are proved explain away the offense charged. (*People ex rel.* v. *MacLean*, 42 N. Y. S. R. 690; *People ex rel.* v. *French*, 123 N. Y. 636.) It was error to compel relator to testify against himself. (Laws of 1869, chap. 678.) This case is not one of extenuating circumstances; but the proof is absolute that Coyle was not guilty of the charge. Mildrum, by refusing to answer, showed that he was not telling the whole truth, and his testimony was all there was for the prosecution. (Code Civ. Pro. § 2140.)

*George S. Coleman* for respondent. The proceedings before the board of police upon the trial of the charge were regular and within the jurisdiction of that board. (Laws of 1882, chap. 410, §§ 250, 272.) The decision of the General Term upon the facts is not reviewable in this court. (Code Civ. Pro. § 2140; *People ex rel.* v. *French*, 92 N. Y. 306; *People ex rel.* v. *Campbell*, 82 id. 255; *People ex rel.* v. *Bd. Police*, 39 id. 517; *People ex rel.* v. *French*, 119 id. 517.) There was no legal error on the part of the commissioners in receiving the testimony of the defendant, and no sufficient objection was made to raise a controversy as to constitutional right under article 1, section 6 of the Constitution of this state. (*People ex rel.* v. *McClave*, 123 N. Y. 512; *People ex rel.* v. *Flanagan*, 93 id. 97.)

EARL, J. The relator, a patrolman, was dismissed from the police force of the city of New York for " conduct unbecoming an officer," in that " on the 26th day of April, 1892, he had an altercation with Patrolman Mildrum, during which he drew his club and struck Mildrum on the head, causing a slight scalp wound, during his tour of duty;" and this proceeding by certiorari was instituted to review the determination of the police commissioners.

While the General Term of the court below had power, under section 2140 of the Code, to weigh the evidence given before the police commissioners upon the trial of the relator, and, if it found that the preponderance thereof was against the facts there found, to set aside the determination there made, we have frequently decided that this court has no such power. (*People ex rel., etc.,* v. *French,* 92 N. Y. 306; *People ex rel., etc.,* v. *Board of Police Commissioners,* 93 id. 97; *People ex rel., etc.,* v. *Board of Fire Commissioners,* 106 id. 257; *People ex rel., etc.,* v. *French,* 119 id. 507.) If there is any evidence fairly sustaining the determination of the police commissioners we cannot interfere therewith. But where there is no real conflict in the evidence, and there is thus a substantial failure of evidence to sustain the determination, we ought, in the exercise of our jurisdiction, to review and reverse it, and we think this is such a case.

At the date mentioned the relator's post extended from 130th street northerly along Seventh avenue, and Mildrum's post extended from that street southerly along the avenue. The relator testified that while he was at the southerly end of his post Mildrum came to him and without any provocation applied to him vile and abusive epithets, which he specified in his evidence; that Mildrum rushed at him and grabbed him by the throat and attempted to strike him with his club; that he, the relator, acted in self-defense, and in doing so touched Mildrum with his club; that he broke loose from Mildrum and started to run away, and did run away from him; that Mildrum drew his pistol from his pocket and chased him and fired three shots at him; that as Mildrum was attempting to fire the fourth shot he turned and grabbed the pistol and the hammer thereof came down and cut his hand; that then, considering his life in danger, he struck Mildrum with his club, and that he acted from the beginning to the end of the affray in self-defense. He also stated that he had a pistol in his pocket during the affray, but did not draw it.

Louis Baecht and John F. Sullivan both testified that they saw the entire transaction between the relator and Mildrum,

and they confirmed the evidence of the relator in every material particular. Their evidence showed that Mildrum was the aggressor, and that the relator was acting in self-defense.

Owen Meehan, a witness for the relator, did not see the commencement of the affray, but he testified that when he came in view of the parties he saw Coyle running across the avenue and that Mildrum followed him and fired three shots at him; that after Mildrum had fired the third shot Coyle turned and grabbed the pistol and then struck Mildrum with his club; that he was acting on the defensive and his life was in danger.

William H. Wharton, a witness called against the relator, testified that he reached the scene of the altercation after it was about over. He saw blood on Coyle's hand and no marks whatever on Mildrum.

Cornelius G. Van Reypen, called as a witness against the relator, testified that he did not see the commencement of the altercation; that he heard the pistol shots and saw the relator and Mildrum clinched and scuffling in the avenue — evidently having reference to the time after the firing of the three shots, when the relator turned and seized the pistol in the hands of Mildrum. He said that Mildrum was the larger man and that Coyle then and there complained that Mildrum had attempted to shoot him.

Patrick Coyle testified that on the evening of April 26th he saw Mildrum at the station house in the presence of his son, the relator, and that Mildrum, speaking of the altercation, then said: "I am to blame for it. I lost my head. One thing I am glad I didn't kill him;" and in this evidence the witness was corroborated by the relator.

I have now called attention to all the material evidence in the case except that of Mildrum, and it shows a most outrageous assault by Mildrum upon the relator; that the relator acted in self-defense, and that, instead of deserving condemnation for what he did, he was entitled to commendation for his forbearance. One appointed to the police force does not

thereby lose his manhood, and when abused and assaulted he has at least the sacred right of self-defense; and upon this evidence it cannot be said that the relator transcended the bounds of a proper self-defense.

The evidence of these witnesses is not contradicted in its essential features by Mildrum. He claimed that the relator at the time of the commencement of the altercation was about twenty-five feet south of his own post on his, Mildrum's, post, where he had been standing for a few minutes. He testified that he walked across the avenue, and asked him what he was doing there. It does not appear that he had any right whatever to interfere with the relator. The record does not disclose that there was any rule or regulation of the police department which authorized him to drive or eject the relator from his post. He testified that he did not commence the altercation, and denied the use of the vile language testified to by the other witnesses. He admitted that a pistol was drawn during the affray, but declined to answer by whom it was drawn. He admitted that Coyle ran away from him, but declined to answer whether he fired the three shots at him while he was running. He admitted that Coyle grabbed his pistol and that he ran after him about fifty feet; but he did not deny that he attempted to grab the relator by the throat. While he denied some of the details testified to by the other witnesses, the material and vital facts testified to by them stand uncontradicted. This is a case where, if the testimony of Mildrum furnishes any evidence in conflict with all the other evidence in the case, it is simply a scintilla, entitled to no weight and wholly insufficient to uphold the determination of the police commissioners.

Without, therefore, disturbing or departing from the rule laid down in the cases above cited, we think the order of the General Term and the determination of the police commissioners should be reversed, with costs in the Supreme Court and in this court to the relator.

All concur, except ANDREWS, Ch. J., not voting.

Ordered accordingly.